David L. Church (659)
Meb W. Anderson (10227)
**BLAISDELL & CHURCH, P.C.**
5995 South Redwood Road
Salt Lake City, Utah 84123
Tel: (801) 261-3407
Fax: (801) 261-3503
meb@bcjlaw.net

---

## IN THE UNITED STATES DISTRICT COURT,

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| IZZY POCO, LLC, | **INDIVIDUAL DEFENDANTS'** |
| Plaintiff, | **MEMORANDUM IN SUPPORT** |
| | **OF MOTION FOR SUMMARY** |
| v. | **JUDGMENT** |
| TOWN OF SPRINGDALE, et al.; | Case No.  2:10CV00559CW |
| Defendants. | Judge Clark Waddoups |

---

Defendants Joe Barker, Pat Cluff, John Callahan, Colin Dockstader, Louise Excell, Stanley J. Smith, Richard (Rick) Wixom, and Fay Cope ("Individual Defendants"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 56, hereby submit the following Memorandum in Support of their Motion for Summary Judgment.

For purposes of this Motion only the facts as presented in the Amended Complaint are not generally disputed.  The purpose of this Motion is that even if the facts as stated in the Amended Complaint are taken as true for purposes of this Motion only, the facts state a claim against the Town of Springdale, and not against any of the individual defendants and each

individual defendant should be dismissed from this matter with prejudice for the reasons articulated herein.    The relevant undisputed facts include the following:

1.      Defendant Joe Barker is a Captain with the Springdale Fire Department.  (Compl. at ¶ 3.)[1]

2.      Defendant Pat Cluff is the current Mayor of Springdale.  (Compl. at ¶ 4.)

3.      Defendant John Callahan is a member of the Springdale Town Council.  (Compl. at ¶ 5.)

4.      Defendant Colin Dockstader has been a member of the Springdale Town Council.  (Compl. at ¶ 6.)[2]

5.      Defendant Louise Excell is a current member of the Springdale Town Council.  (Compl. at ¶ 7.)

6.      Defendant Stanley J. Smith is a current member of the Springdale Town Council.  (Compl. at ¶ 8.)

7.      Defendant Rick Wixom is the Town Manager for the Town of Springdale.  (Compl. at ¶ 9.)

8.      Defendant Fay Cope is the Town Clerk for the Town of Springdale.  (Compl. at ¶ 10.)

---

[1] Mr. Barker is actually a Captain with the Rockville/Springdale Fire District, and has acted in the capacity of fire marshal for approval of municipal permits.  (Wixom Aff. at ¶ 3.)  Notwithstanding, Mr. Barker is entitled to qualified immunity from suit.
[2] Mr. Dockstader is no longer a member of the Springdale Town Council, but for purposes of this Motion none of the facts as stated in the Amended Complaint are disputed.  Regardless, Mr. Dockstader is entitled to Summary Judgment dismissal from this matter as a matter of law.

9.      In early 2006, the Springdale Town Council enacted an ordinance that prohibits "formula restaurants and formula delicatessens" within the Town of Springdale, Utah.  (Compl. at ¶ 15-32;) (Wixom Aff. at ¶ 10.)

10.     Izzy Poco was granted a business license by the Town of Springdale to open and operate a sandwich shop restaurant, which license was up for renewal on June 30, 2010.  (Compl. at ¶ 35.)  Despite being issued a business license to open and operate a sandwich shop in 2009, Izzy Poco never opened any type of sandwich shop at the Springdale location.  (Affidavit of Rick Wixom (Wixom Aff.) at ¶ 11, attached hereto as Exh. A.)

11.     On or about May of 2010, Izzy Poco, or others, began active construction on the building located at 180 Zion Park Boulevard in Springdale, Utah.  At this time, no building permit had been obtained to authorize this construction.  Subsequently, the Town notified Izzy Poco of the need to obtain a building permit prior to commencement of any construction activities.  Although a building permit was later issued, to date, none of the required inspections have been completed and no certificate of occupancy has been issued.  (Wixom Aff. at ¶ 12.)

12.     In a letter dated June 1, 2010 Izzy Poco, through FSFTW Corporation, was apprised of the fact that it needed a construction permit, a business license (which had been applied for through renewal), and because of the new construction a new health department certification and proof of fire department inspection would be required before the renewal can be processed.  (Wixom Aff. at ¶ 13.)

13.     Izzy Poco was also apprised in the June 1, 2010 letter that the Town of Springdale was aware that they may be planning to open a Subway sandwich formula restaurant, and to please be advised that the Town Code Prohibits "formula restaurants."  The letter indicates: "A

3

typical Subway franchise restaurant meets the Town's definition of a formula restaurant and thus

will not be allowed." (June 1, 2010 letter, attached as Exh. 1 to Wixom Aff. at ¶ 14.)

14.     Springdale Town Code § 10-22-1 codifies the purpose behind the "Special Uses"

section of the Town of Springdale zoning code:

> The purpose of this chapter is to protect the general health, safety and welfare by
> prescribing regulations for uses deemed special due to the impact such use may
> have if not strictly controlled, and to prescribe specific standards for these uses so
> as to achieve the following goals:
> A. To promote wise and efficient use of the town's natural and physical resources
> which are limited by topography, area and proximity.
> B. To protect, preserve and enhance the aesthetic qualities of the town.
> C. To minimize the visual, noise and air pollution impacts caused by special uses,
> and the undue burden special uses may place on public utilities and services.
> D. To provide a "village scale" in the town by promoting small scale, family
> owned businesses.

(Ord. 12-000, 12-28-1992) (attached as Exh. B hereto.)

15.     Springdale Town Code § 10-22-2 details the applicability of the ordinance as

follows: "The provisions of this chapter shall apply to the uses and conditions hereinafter

enumerated. Where this chapter prescribes regulations more restrictive than the zone in which a

use is permitted or conditionally permitted, the provisions of this chapter shall apply. (Ord. 12-

000, 12-28-1992)" (Exh. B.)

16.     Springdale Town Code § 10-22-3 details the following uses which are prohibited

under the Town's zoning ordinance:

> Subject to the provisions of section 10-21-1 of this title, the following uses are
> recognized to be incompatible with the general plan, because of the limited
> amount of private land available within the town's boundaries; the large size or
> scale required of such uses; excessive noise, odor or light emissions; their
> excessive use of limited resources and the undue burden they place on public
> utilities and services, or because they are of a character hereby found to be in
> conflict with the town's general plan:

4

> Amusement arcades, theme parks or water parks.
> Automobile repair (major) and automobile dealerships.
> Bowling alleys or skating rinks.
> Circuses or carnivals.
> Drive-in theaters.
> Formula restaurants and formula delicatessens.
> Heavy industrial and manufacturing uses.
> Junkyards.
> Landing strips or airports for aircraft and/or heliports.
> Mini-golf courses and driving ranges with floodlights.
> Mining, quarries or gravel pits.
> Recreational vehicle parks and/or campgrounds.
> Shooting clubs or ranges.
> Shopping malls.
> Storage establishments.
> Wholesale stores.

(Ord. 2006-12, 6-14-2006) (attached as Exh. B.)

17.   Pursuant to the Town of Springdale Town Code, a "formula restaurant and formula delicatessen" is defined as: "A business which is required by contractual or other arrangement to provide any of the following: substantially identical menu items, packaging, food preparation, methods, employee uniforms, interior décor, signage, exterior design, or name as any other restaurant or delicatessen in any other location." Springdale Town Code § 10-2-2 (Definitions) (Wixom Aff. at ¶ 19.)

18.   On June 14, 2010 Springdale Town Attorney J. Gregory Hardman notified Izzy Poco through Renee Goodnow (Registered Agent) that "Izzy Poco's Business License Renewal Application, dated May 5, 2010, for the property situated at 180 Zion Park Boulevard, Springdale, Utah, is DENIED . . . [.]" (Letter dated June 14, 2010, attached as Exh. 2 to Wixom Aff. at ¶ 20.)

19.     Among other things, the Business License Renewal was denied because: "the stated business activity or purpose is 'retail, rest(aurant), and tubing' when in fact, Izzy Poco seeks to operate a prohibited formula restaurant formula delicatessen (i.e., a Subway Sandwiches restaurant/delicatessen)[.]"  (Exh. 2 to Wixom Aff. at ¶21.)

20.     Prior to enacting the formula restaurant ordinance the Town of Springdale asked its town attorneys V. Lowry Snow and J. Gregory Hardman to make a comprehensive study of the feasibility and legal possibilities of prohibiting or restricting formula restaurants and delicatessens.  (Wixom Aff. at ¶ 22.)

21.     The Town attorneys advised the Town of Springdale that if the Town, community, and empirical evidence supported a reasonable restriction of formula restaurants, a prohibiting ordinance such as the formula restaurant ordinance the Town of Springdale enacted should be constitutional.  (Wixom Aff. at ¶ 23.)

22.     Prior to enacting the formula restaurant ordinance the Town of Springdale gathered a strong and extensive administrative record in support of the formula restaurant ordinance, including but not limited to:  a) gathering empirical evidence supporting the reasoning behind the ordinance of protecting the village atmosphere, unique sense of place, and small-town character of Springdale and preserving unique features of the Town as a gateway to Zion National Park while encouraging return visitation; b) obtaining studies of other municipalities with similarly restrictive ordinances; c) discussing the impact of fast-food packaging on litter; d) letters indicating that visitors experienced Springdale as a continuation of their visit to Zion National Park; e) surveys indicating strong community support for controlling or prohibiting formula restaurants; f) discussion that the "fast food" concept was not indicative of Springdale's

character, and that part of the unique character was the unique food available; g) preserving the historical principles that have shaped the Town of Springdale; h) talking with city officials from Cannon Beach, Oregon which had no formula restaurants; i) discussion regarding the Town promoting pedestrian traffic in order to reduce noise and protect the solitude of the canyon; j) discussion regarding the reasonableness of such an ordinance; k) discussion regarding the fact that the ordinance could not target users, only uses; l) obtaining data regarding the Town's awards, newspaper articles, and input from the National Park Service regarding the history and character of Springdale; m) reviewing articles about cities that had drafted successful ordinances prohibiting formula businesses; n) reviewing ordinances from other cities, including but not limited to Arcata, California, and Coronado, California that restricted or prohibited formula businesses; o) discussions that people did not come to Springdale to have a formula restaurant experience; p) review of a 2002 survey which indicated that nearly ten times as many people in Springdale thought formula restaurants were unimportant businesses to attract; and q) discussions regarding current overwhelming community support for such an ordinance, including review of 21 letters written in support of the formula restaurant ordinance.  (Wixom Aff. at ¶ 24.)

23.    Multiple considerations supported the Town's adoption of the ordinance at issue, including the Town's unique sense of place, character, and history based on its proximity to Zion National Park, and the significant environmental features of the surrounding and towering red rock cliffs.  (Wixom Aff. at ¶ 25.)

24.    Since enacting the formula restaurant ordinance, no formula restaurants have been granted a new business license.  (Wixom Aff. at ¶ 26.)

## ARGUMENT

### I.   The Summary Judgment Standard.

In general, summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A mere factual dispute will not preclude summary judgment, rather there must be a genuine issue of material fact. *See Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000).  Further, when the Defendants' and the Plaintiffs' version of events clearly diverge, this Court need not blindly accept Plaintiffs' often one-sided version of the events, but rather it is the "factual matrix" most favorable to the Plaintiff that this Court must consider. *See Carr v. Castle*, 337 F.3d 1221, 1227 (10th Cir. 2003).  Here, it is clear that each of the individual defendants is entitled to judgment as a matter of law.

In other words, the non-moving party must provide evidence "such that a reasonable jury could return a verdict for the non-moving party." *Cooperman*, 214 F.3d at 1164.  This means that the plaintiff must provide "significant probative evidence tending to support the complaint." *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 290 (1968).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (citations omitted).  However, as will be described immediately hereafter, motions for summary judgment which assert a defense of qualified immunity, place additional burdens on the plaintiff that are not found in the typical summary judgment setting.  *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995) (holding that "we review summary judgment decisions involving a qualified immunity defense somewhat differently than other summary judgment rulings.").

II.     **The Doctrine Of Legislative Immunity Requires Dismissal Of Defendants Callahan, Dockstader, Excell, Smith, And Likely Mayor Cluff.**

"The concept of legislative immunity is well established in [the Tenth] circuit, *see, e.g.,* *Fry v. Board of County Comm'rs*, 7 F.3d 936, 942 (10th Cir. 1993), and the Supreme Court recently confirmed that, like their federal, state, and regional counterparts, '[l]ocal legislators are entitled to absolute immunity from § 1983 liability for their legislative activities.' *Bogan v. Scott-Harris*, 118 S.Ct. 966, 972 (1998)." *Kamplain v. Curry County Board of Comm'rs*, 159 F.3d 1248, 1250 (10th Cir. 1998). "Legislative immunity enables officials to serve the public without fear of personal liability." *Sable II v. Myers*, 563 F.3d 1120, 1123 (10th Cir. 2009). The key inquiry for this Court regarding legislative immunity is whether the Town council members were acting "in the sphere of legitimate legislative activity." *Kamplain,* 159 F.3d at 1251. "[T]he Supreme Court has instructed [], in admittedly differing contexts, that, at its core, the legislative function involves determining, formulating, and making policy." *Id.* "This circuit has followed the Supreme Court's broad view of legislative immunity." *Sable II*, 563 F.3d at 1125.

Here, certain Individual Defendants are accused of implementing an allegedly unconstitutional ordinance. The Supreme Court has expressly held that the acts of introducing, voting for, and signing an ordinance are by their very nature legislative. *Boggan v. Scott-Harris*, 523 U.S. 44, 46 & 55 (1998). Accordingly, while a claim may be asserted against the local entity, there is absolutely no claim available against the public officials of the local entity, here the officials of the Town of Springdale. The Tenth Circuit has asserted the rational for legislative immunity at the local level:

> We appreciate the discomfort that may arise from the recognition of legislative
> immunity . . . [.] [C]harges of improper motive are likely easier to bring at the

9

> local-government level. And the honor and fortune that come from service in
> local government are slight enough that many capable candidates for municipal
> office would surely forego the rewards of such service if faced with the possibility
> of being sued for every decision taken without public consensus.

*Sable II*, 563 F.3d at 1127.

Case law clearly indicates that intent or motives behind the legislators' enactment of the

allegedly unconstitutional ordinance is not relevant to the legislative immunity inquiry.

"Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of

the official performing it." *Bogan*, 523 U.S. at 54. The Tenth Circuit has expressly held that:

"Because legislative immunity is absolute, any individual motive which may have guided a

[council member] is irrelevant." *Fry*, 7 F.3d at 942. Here, it is clear that Defendants Callahan,

Dockstader, Excell, and Smith are all entitled to absolute legislative immunity from suit.

Further, the Supreme Court has held that "officials outside the legislative branch are

entitled to legislative immunity when they perform legislative functions." *Bogan*, 523 U.S. at

55. Accordingly, Town Mayor Pat Cluff is likely also entitled to legislative immunity to the

extent that she only signed the allegedly unconstitutional ordinance placing it into effect, a

decidedly legislative function. Regardless, Mayor Cluff is entitled to qualified immunity as

discussed herein.

### III.   The Doctrine Of Qualified Immunity Warrants Dismissal Of Each Of The Individual Defendants.

Here, each of the individual defendants not entitled to legislative immunity is entitled to

qualified immunity from this action. Actions taken by Town Officials, other than the Town

Council which clearly enjoys legislative immunity, to implement legislation are typically not

shielded from suit by legislative immunity. Rather, these officials' implementation actions

should be evaluated under the qualified immunity doctrine. *See Scheuer v. Rhodes*, 416 U.S.

232, 247-248 (1974).

The United States Supreme Court has held that:

The doctrine of qualified immunity protects government officials "from liability
for civil damages insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person would have
known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d
396 (1982). Qualified immunity balances two important interests—the need to
hold public officials accountable when they exercise power irresponsibly and the
need to shield officials from harassment, distraction, and liability when they
perform their duties reasonably. The protection of qualified immunity applies
regardless of whether the government official's error is "a mistake of law, a
mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v.
Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004)
(KENNEDY, J., dissenting) (citing *Butz v. Economou*, 438 U.S. 478, 507, 98
S.Ct. 2894, 57 L.Ed.2d 895 (1978) (noting that qualified immunity covers "mere
mistakes in judgment, whether the mistake is one of fact or one of law")).

Because qualified immunity is "an immunity from suit rather than a mere defense
to liability . . . it is effectively lost if a case is erroneously permitted to go to trial."
*Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)
(emphasis deleted). Indeed, we have made clear that the "driving force" behind
creation of the qualified immunity doctrine was a desire to ensure that
"`insubstantial claims' against government officials [will] be resolved prior to
discovery." *Anderson v. Creighton*, 483 U.S. 635, 640, n. 2, 107 S.Ct. 3034, 97
L.Ed.2d 523 (1987). Accordingly, "we repeatedly have stressed the importance of
resolving immunity questions at the earliest possible stage in litigation." *Hunter
v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per
curiam).

*Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009).

The Tenth Circuit has held that qualified immunity protects "all but the plainly

incompetent or those who knowingly violate the law." *Gross v. Pirtle*, 245 F.3d 1151, 1155

(10th Cir. 2001). The Supreme Court has further held that "[q]aulified immunity shields an

[government official] from suit when she makes a decision that, even if constitutionally

deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct 596, 599 (2004).

Once a defendant raises a qualified immunity defense, the plaintiff bears the heavy burden of proving (1) that the facts alleged make out a violation of a constitutional right, and/or (2) that a reasonable municipal official would have known they were violating such a constitutional right. *Pearson*, 129 S.Ct. at 816, *see Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1515 (10th Cir. 1995)(holding that once the defendant adequately raised the qualified immunity defense the plaintiff must show that the law was clearly established when the alleged violation occurred and the plaintiff must present facts or allegations sufficient to show that the official violated that law); *see also Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (plaintiff must satisfy this "heavy two-part burden."). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Harrington*, 268 F.3d at 1186.

The United States Supreme Court has "jettisoned its prior holding that courts in qualified immunity cases must determine whether the plaintiff's constitutional rights were violated before turning to whether the asserted right was clearly established." *Christensen v. Park City Municipal Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009). Accordingly, because this Motion is brought by the individual defendants only, and because the ultimate issue of whether the ordinance at issue is constitutional may not be so easily determined without discovery, this Motion rests solely on the obvious proposition that each of the individual defendants is still undoubtedly warranted qualified immunity (and/or legislative immunity as discussed herein) at

12

this junction of the suit because it is clear as a matter of law that the no reasonable official would

have known they were violating Izzy Poco's constitutional rights under the facts as pled.

Here, the facts pled regarding the individual defendants equate to the following

allegations:

> Acting under color of law, Defendants have violated Izzy Poco's right, privilege,
> or immunity secured by the Commerce Clause of the United States Constitution
> by preventing Izzy Poco from engaging in interstate trade free from restrictive and
> discriminatory local regulations including, but not limited to, by (a) unevenly and
> discriminatorily applying and enforcing the Franchise Ordinance; (b) refusing to
> renew Izzy Poco's business license pursuant to the Franchise Ordinance so long
> as Izzy Poco's business has anything to do with a Subway; (c) the Springdale Fire
> Marshall refusing to inspect Izzy Poco's place of business because it violates the
> Franchise Ordinance; and (d) prohibiting the County Fire Marshall from
> inspecting the premises.

(Amended Compl. at ¶ 60.)  Clearly, the common theme is the Individual Defendants' alleged

unconstitutional conduct as a result of the allegedly unconstitutional formula restaurant

ordinance.

### A.     The Law Is Not Clearly Established Regarding The Unconstitutionality Of Formula Restaurant Ordinances.

No reasonable Springdale Town official would have known under any scenario that their

conduct in enacting and enforcing the formula restaurant ordinance was unconstitutional.  "Once

a defendant raises the defense of qualified immunity as a defense to an action, the plaintiff

carries the burden of convincing the court that the law was clearly established." *V-1 Oil*

*Company v. State of Wyoming*, 902 F.2d 1482 (10th Cir. 1990) (marks omitted).

In the Tenth Circuit, "[t]he law is clearly established when a Supreme Court or Tenth

Circuit decision is on point, or if the clearly established weight of authority from other courts

shows that the right must be as plaintiff maintains." *Roska v. Petersen*, 328 F.3d 1230, 1248

(10th Cir. 2003). "[T]he touchstone of [the Tenth Circuit's] inquiry is whether the officers were on notice that their conduct was unlawful." *Id.* (marks omitted). "[T]he contours of the right must be sufficiently clear such that an objectively reasonable officer would understand that what she is doing violates that right." *Id.* at 1247 (citing *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)). "In other words, a civil rights defendant is entitled to fair warning that his conduct deprived his victim of a constitutional right." *Id.* (marks omitted). "We do not expect even reasonable officers to conduct and resolve complicated, multi-part constitutional tests." *Lawrence v. Reed*, 406 F.3d 1224, 1235 (10th Cir. 2005).

Here, the Town of Springdale is not aware of a Tenth Circuit or Supreme Court case that establishes that the Town of Springdale's formula restaurant ordinance is unconstitutional. As indicated above, Plaintiff has the burden to produce such a case. A handful of decisions from other circuits (if they even exist) that lend support to Plaintiff's claims do not "clearly establish" the law. *See Christensen*, 554 F.3d at 1277-78. Decisions from other courts or circuits must have been so broadly accepted as to be considered the "weight of authority." *Id.*

The Tenth Circuit has held - and the weight of the authority in other circuits has also held - that when an ordinance indirectly affects interstate commerce and regulates evenhandedly a court must engage a balancing test examining whether the municipal interest is legitimate and whether the burden on interstate commerce clearly exceeds local benefits. *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1039-40 (10th Cir. 2009); *see Southwest Air Ambulance v. Las Cruces*, 268 F.3d 1162, 1177 (10th Cir. 2001) (holding that "[i]t is now well settled that a state may regulate matters of local concern over which federal authority has not been exercised, even

though the regulation has some impact on interstate commerce.")[3]; *see also Cachia v. Islamorada*, 542 F.3d 839 (11th Cir. 2008) (holding that the town's formula restaurant ordinance does not facially discriminate against interstate commerce, and that remand was necessary in claim against municipality for balancing ordinance's stated interests against impact on interstate commerce); *Harmon City, Inc., v. Draper City*, 997 P.2d 321, 328 (Utah App. 2000) (holding that a city may rely on the concerns of interested citizens when performing legislative functions).

In *Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 1992), the Sixth Circuit held that where a city legislative body heard evidence and statements by citizens who were concerned about traffic problems and over-commercialization of the area leading to deterioration of the neighborhood, those concerns were rationally related to the legislative goals. "Even parochial motives, if not based on animosity toward a protected class or similar invidious purpose, will not invalidate local zoning." *Id.* at 1224. Of particular note, the *Pearson* Court indicated that the plaintiff was a "property owner who wanted to sell out to McDonald's" and was treated the same way any similarly situated property owner would have been treated despite the clear reasoning behind the treatment being to keep McDonald's out of the neighborhood. *Id.* Similarly, here Izzy Poco is treated as any other person attempting to bring a formula restaurant into Springdale. (Wixom Aff. at ¶ 26.) Clearly, the Town of Springdale formula restaurant ordinance is anything but "clearly established" as being unconstitutional, and in fact is patently constitutional.

---

[3] In a zoning case, the Tenth Circuit has also expressly held that: "retaining the vitality of the downtown area was a legitimate interest of the city commission. Declining to rezone property in a manner that would threaten the vitality of the downtown retail area is rationally related to that purpose." *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kansas*, 927 F.2d 1111, 1119 (10th Cir. 1991) (dismissing equal protection claim where appellants failed to support the existence of two identifiable groups whom the city treated differently); *see also Bradley v. Payson City*, 70 P.3d 47, 56 (Utah 2003) (holding that Utah municipality has the right to deny a zoning change request if it has a reasonable basis to believe that it will conserve the values of other properties and encourage the most appropriate use thereof).

Further, the fact that the Springdale Town Council had enacted an ordinance similar to those enacted in other municipalities - and after review and input from the Town attorney - militates heavily in favor of the constitutionality of the Town officials' conduct. "[Q]ualified immunity precludes the imposition of liability for 'all but the plainly incompetent or those who knowingly violate the law.'" *Roska v. Petersen*, 328 F.3d 1230, 1251 (10th Cir. 2003) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (emphasis in original). "Where officers of reasonable competence could disagree on the issue, immunity should be recognized." *Id.* (marks omitted). "[T]he existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional." *Id.*[4]

When, as here, an ordinance is in place that the officials are relying on, the qualified immunity analysis does not focus on whether a reasonable official could have concluded that the ordinance authorized the conduct in question. "Rather, a court must consider whether reliance on the statute rendered the officer's conduct 'objectively reasonable,' considering such factors as: (1) the degree of specificity with which the statute authorized the conduct in question; (2) whether the officer in fact complied with the statute; (3) whether the statute has fallen into desuetude; and (4) whether the officer could have reasonably concluded the statute was constitutional." *Id*; *see also Lawrence v. Reed*, 406 F.3d 1224, 1231 (10th Cir. 2005) (recognizing that an officers reliance on an enacted statute that explicitly sanctioned the conduct in question may absolve the officer from knowing that his conduct was unlawful).

---

[4] Even where the law has been clearly established, the Tenth Circuit has held that "'extraordinary circumstances'" - - such as reliance on the advice of counsel or on a statute - - so prevented the official from knowing that his actions were unconstitutional that he should not be imputed with knowledge of a clearly established right." *Lawrence v. Reed*, 406 F.3d 1224, 1230 (10th Cir. 2005) (marks omitted).

Here, the ordinance is specific and clearly tailored to prohibit only formula restaurants and other businesses determined to be detrimental to the Town of Springdale's general plan. *See* (Exh. B.) Here, Captain Joe Barker, Mayor Pat Cluff, Town Manager Rick Wixom, and Town Clerk Faye Cope all acted in compliance with the ordinance. *See* (Wixom Aff. generally) Here, the statute has not fallen into desuetude. *See* (Wixom Aff. generally & Exh. 1 & 2.) Here, the Tenth Circuit case law, and that of other circuits, expressly indicates that a Town official could have reasonably concluded the ordinance was constitutional. Accordingly, the Individual Defendants' reliance on the Town ordinance in and of itself immunizes them from liability in this matter based on the doctrine of qualified immunity.

Finally, the Tenth Circuit has held as follows regarding public officials who rely on the advice of counsel in enforcing or acting under an unconstitutional statute:[5]

> Of course, such [consultation with counsel] is not inherently extraordinary, for few things in government are more common than the receipt of legal advice. Instead, as noted above, the question is whether the consultation so prevented the official from knowing that his actions were unconstitutional that he should not be imputed with knowledge of a clearly established right. When evaluating such a claim, we look to the totality of the circumstances, including such factors as: [1] how unequivocal, and specifically tailored to the particular facts giving rise to the controversy, the advice was, [2] whether complete information had been provided to the advising attorney(s), [3] the prominence and competence of the attorney(s), and [4] how soon after the advice was received the disputed action was taken. These four factors are not the only relevant circumstances.

*Lawrence v. Reed*, 406 F.3d 1224, 1231 (10th Cir. 2005) (citations and marks omitted); *see V-1 Oil Co. v. State of Wyoming*, 902 F.2d 1482, 1489 (10th Cir. 1990) (holding that "a reasonable

---

[5] In each of these Tenth Circuit decisions the offending ordinance or action taken had already been deemed unconstitutional. Here, the formula restaurant ordinance's constitutionality is yet to be resolved. Regardless the Town officials are entitled to qualified immunity at the earliest possible stage of this case and it is clear at this juncture that they enjoy qualified immunity as they could not have known they were enforcing an unconstitutional ordinance.

officer in [defendant's] position - - that is, an officer who conducts a warrantless search on the same day he was advised by informed, high-ranking government attorneys that a particular statute, which had not yet been tested in any court, lawfully authorized that particular search - - should not be expected to have known that the search was unconstitutional.").

Here, the consultation with the Town attorneys involved a comprehensive study of the feasibility and legal possibilities of prohibiting or restricting formula restaurants. (Wixom Aff. at ¶ 22.) In other words, the Town sought legal advice as to whether or not enacting and enforcing the formula restaurant ordinance was constitutional. The Town's prominent and competent attorneys, V. Lowry Snow and J. Gregory Hardman, indicated to the Town of Springdale that if the Town, community, and empirical evidence supported a reasonable restriction of formula restaurants, a prohibiting ordinance should be constitutionally supportable. (*Id.* at ¶¶ 22-33.) The Town, together with the Town attorneys, also gathered or conducted extensive extrinsic evidence and research supporting the constitutionality of the Town's formula restaurant ordinance. (*Id.* at ¶ 24.) Clearly, the advice of counsel indicated to the Individual Defendants that their conduct was reasonable under any scenario, and thus, qualified immunity applies to their conduct.

Accordingly, as a matter of law, no reasonable public official affiliated with the Town of Springdale, Utah would have understood the formula restaurant ordinance to be unconstitutional. The reality is, as addressed herein, the advice counsel gave to the Town officials that the formula restaurant prohibition was constitutional so long as based on empirical evidence that such a prohibition was desired and necessary to the Town's general plan was correct in the Tenth Circuit.

## CONCLUSION

For the reasons articulated herein each of the Individual Defendants is entitled to be dismissed from this lawsuit with prejudice.

Dated this 9th day of March 2011.

/s Meb W. Anderson
David L. Church
Meb W. Anderson
**BLAISDELL & CHURCH, PC**

## CERTIFICATE OF SERVICE

I hereby certify that on March 9th, 2011, I caused a true and correct copy of the foregoing **INDIVIDUAL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** to be served via electronic mail upon the following:

Clay Stucki
Jaryl Rencher
STUCKI STEELE & RENCHER, LLC
299 South Main Street, Suite 2200
Salt Lake City, Utah 84111

<u>/s Meb W. Anderson</u>