# EXHIBIT B

# Chapter 22
# SPECIAL USES

10-22-1: PURPOSE:
10-22-2: APPLICABILITY:
10-22-3: USES PROHIBITED:
10-22-4: TEMPORARY USES:
10-22-5: DAYCARE HOMES, NURSERY SCHOOLS AND DAYCARE CENTERS1 (REP. BY ORD. 2007-04, 7-11-2007):
10-22-6: RESIDENTIAL FACILITIES FOR THE ELDERLY:
10-22-7: RESIDENTIAL FACILITIES FOR DISABLED PERSONS:
10-22-8: BED AND BREAKFASTS:
10-22-9: HOME OCCUPATIONS:
10-22-10: ACCESSORY USES:
10-22-11: FARM ANIMALS:
10-22-12: MOBILE HOMES:
10-22-13: OPEN AIR DISPLAY:
10-22-14: FARMERS' MARKETS:

## 10-22-1: PURPOSE:

The purpose of this chapter is to protect the general health, safety and welfare by prescribing regulations for uses deemed special due to the impact such use may have if not strictly controlled, and to prescribe specific standards for these uses so as to achieve the following goals:

A. To promote wise and efficient use of the town's natural and physical resources which are limited by topography, area and proximity.

B. To protect, preserve and enhance the aesthetic qualities of the town.

C. To minimize the visual, noise and air pollution impacts caused by special uses, and the undue burden special uses may place on public utilities and services.

D. To provide a "village scale" in the town by promoting small scale, family owned businesses. (Ord. 12-000, 12-28-1992)

## 10-22-2: APPLICABILITY:

The provisions of this chapter shall apply to the uses and conditions hereinafter enumerated. Where this chapter prescribes regulations more restrictive than the zone in which a use is permitted or conditionally permitted, the provisions of this chapter shall apply. (Ord. 12-000, 12-28-1992)

The section below has been affected by a recently passed ordinance, 2010-08 - PROHIBITION ON HELIPADS, HELISTOPS. Go to new ordinance.

## 10-22-3: USES PROHIBITED:

Subject to the provisions of section 10-21-1 of this title, the following uses are recognized to be incompatible with the general plan, because of the limited amount of private land available within the town's boundaries; the large size or scale required of such uses; excessive noise, odor or light emissions; their excessive use of limited resources and the undue burden they place on public utilities and services, or because they are of a character hereby found to be in conflict with the town's general plan:

Amusement arcades, theme parks or water parks.

Automobile repair (major) and automobile dealerships.

Bowling alleys or skating rinks.

Circuses or carnivals.

Drive-in theaters.

Formula restaurants and formula delicatessens.

Heavy industrial and manufacturing uses.

Junkyards.

Landing strips or airports for aircraft and/or heliports.

Mini-golf courses and driving ranges with floodlights.

Mining, quarries or gravel pits.

Recreational vehicle parks and/or campgrounds.

Shooting clubs or ranges.

Shopping malls.

Storage establishments.

Wholesale stores. (Ord. 2006-12, 6-14-2006)

## 10-22-4: TEMPORARY USES:

The following regulations are provided to accommodate those uses of land or buildings which are temporary in nature and are not, therefore, listed as regular permitted or conditional uses in any zone of the town. The character of these uses is such that proper conditions are required to protect adjacent properties and the general health, safety and welfare of the citizens of the town. Any building or structure which does not meet the requirements of this section shall be treated as a permanent land use and shall conform to all required standards of building, health, fire, zoning and other similar codes and ordinances.

A. Allowed Temporary Uses: The following temporary uses are allowed subject to the issuance of a temporary use permit and the regulations established herein:

1. Nonprofit Fundraising Activities: Any and all offering of products and services conducted as fundraising activities by a recognized nonprofit group or organization subject to the following limitations:

    a. One event up to seven (7) consecutive days in duration per six (6) month period if the products or services are offered for sale in a temporary structure or at a temporary site.

    b. In addition to the above, six (6) events of up to three (3) consecutive days in duration may be conducted during the calendar year.

    c. Such fundraising activities shall be conducted in accordance with all other applicable ordinances, codes and laws of the town and the state. (Ord. 12-000, 12-28-1992)

2. Organized Outdoor Events: Educational, historic, religious and patriotic displays or exhibits, outdoor concerts, athletic or recreational events, festivals, street fairs, outdoor arts and crafts fairs and other organized events, subject to the following limitations: (Ord. 2006-07, 5-3-2006)

    a. Only one event may be sponsored by the same individual, business or organization per quarter, unless the planning commission authorizes an exception to the times an event may occur. The fee for such outdoor event is to be set by the town council. (Ord. 4-97, 7-3-1997)

    b. No single event shall exceed four (4) consecutive days.

3. Accessory Parking Facilities: Parking facilities which serve either other temporary uses or serve lawfully established uses on a temporary basis and which are subject to the following limitations:

    a. Accessory parking facilities shall be required to obtain a separate temporary use permit if associated with other temporary uses.

    b. Accessory parking facilities associated with other temporary uses shall be permitted an additional day on either side of the event or use with which they are associated, not to exceed a total of six (6) consecutive days, to allow for preactivity preparation and postactivity cleanup.

    c. Accessory parking facilities associated with lawfully established uses may be allowed for special circumstances which render the regularly provided off street parking insufficient. The duration of use of accessory parking facilities permitted under this section shall not exceed three (3) months.

    d. All parking shall meet the standards for off street parking as specified in chapter 23 of this title, except that required parking may be provided on an unfinished grass or dirt surface.

    e. Such parking shall not have the effect of decreasing any existing parking that is required for any other use existing on the site where the accessory parking facility is located. (Ord. 12-000, 12-28-1992)

4. Temporary Structures During Commercial Construction: One mobile home designed for use as temporary dwelling space for security purposes and/or other temporary structure, designed for use as temporary office space and portable sanitary facilities or tool storage structures, may be placed upon the premises during the actual period of construction of a commercial building, subject to the following limitations:

    a. A mobile home or other temporary structure shall be permitted to remain upon the premises during construction of a commercial building for a period of time not to exceed the time limit for construction under the contract.

    b. Occupancy of such mobile home, and use of other such temporary structures, shall terminate upon issuance of a temporary certificate of occupancy or certificate of occupancy (if granted

outright), of all or part of the structure for which the building permit was issued. (Ord. 16-95, 12-7-1995)

c. The time limits provided herein shall not be extended and permits shall not be subject to renewal.

5. Temporary Structures During Residential Construction: A mobile home and/or other temporary structure, designed for use as temporary dwelling space, and portable sanitary facilities or tool storage structures, may be placed upon the rear half of the premises during the actual period of construction of a permanent single- or two-family residential dwelling, provided the following conditions are met:

a. A building permit for construction of the permanent residence has been issued prior to location of the mobile home or other temporary structure on the site;

b. That said mobile home remains on the site only until final inspection is granted on the permanent residence, and in no event for a period exceeding two (2) years.

B. Application: An application for a temporary use permit shall be filed with the director of community development, and shall contain the following required information, as applicable:

1. Name of the applicant and organizational affiliation;

2. Notarized statement of ownership or letter of authorization from the owner of the property on which the use is proposed to be located;

3. Cover letter describing the project or event;

4. Existing zoning of site and contiguous properties;

5. A narrative description of contiguous uses;

6. Location of existing structures on adjacent property;

7. Site plan, drawn to scale, showing proposed locations and uses of all temporary structures;

8. The date of the event, activity or installation of such temporary structures;

9. The date that the event, activity or occupancy of all temporary structures shall cease.

C. Standards: Prior to the issuance of a temporary use permit, the director of community development or his designate shall find:

1. That the use is temporary and impermanent;

2. That the use will not create a nuisance, hazard or interfere with neighboring properties and enjoyment thereof;

3. That the location will not create a traffic hazard or parking problem in the right of way and that parking is available on-site or at satellite locations by separate permit. Traffic control, if necessary, shall be provided at the expense of the applicant, unless the event is deemed of significant interest to the town, in which case traffic control may be provided by appropriate town or county officials;

4. That all associated signs conform to the town sign regulations and will be temporary and impermanent;

5. Copies of health department approval where food items or food products are handled or sold, and in any other situation where health department standards apply;

6. Copies of UDOT approval shall be obtained if the event or activity will utilize the SR-9 right of way;

7. That the lot will be kept clean and free from litter and debris at all times;

8. That landscape and natural vegetation areas will not be injured or trampled and the liability for replacement of any damage which may occur shall be assumed by the applicant;

9. That adequate on-site sanitary facilities are available or shall be provided by the applicant;

10. That the applicant shall have sufficient liability insurance for the requested use or event. (Ord. 12-000, 12-28-1992)

D. Revocation Of Permit: A temporary use permit shall be revoked and the said use immediately ceased in the event of a violation of any of the provisions of this section or the conditions set forth in the temporary use permit. (Ord. 16-95, 12-7-1995)

E. Business License Required: A temporary use permit is not a business license and the granting of said permit shall not relieve the permittee of any other license requirement of the town or any other public agency.

F. Fees: In order to offset a portion of the costs incurred by the town in processing temporary use permits, a fee shall be charged as established by resolution of the town council. (Ord. 12-000, 12-28-1992)

## 10-22-5: DAYCARE HOMES, NURSERY SCHOOLS AND DAYCARE CENTERS[2]:

(Rep. by Ord. 2007-04, 7-11-2007)

## 10-22-6: RESIDENTIAL FACILITIES FOR THE ELDERLY:

A residential facility for elderly persons shall be owned by one of the residents, or by an immediate family member of one of the residents, or be a facility for which the title has been placed in trust for a resident; be consistent with existing zoning of the desired location; and be occupied on a twenty four (24) hour per day basis by eight (8) or fewer elderly persons in a family type arrangement. Further, a residential facility for elderly persons may not operate as a business, and may not be considered a business because a fee is charged for food or for actual and necessary costs of operation and maintenance of the facility.

A. Permitted Use; Multiple-Family Zones: A residential facility for elderly persons is a permitted use in any area where residential dwellings are allowed, except an area zoned to permit exclusively single-family dwellings. Prior to establishing a residential facility for elderly persons, a home occupation permit must be obtained by application to the planning commission. A home occupation permit shall be issued if the applicant can show that:

1. The facility meets all building, safety, zoning and health ordinances applicable to similar dwellings;

2. Adequate off street parking space is provided;

3. The facility is capable of use as a residential facility for elderly persons without structural or landscaping alterations that would change the structure's residential character;

4. No residential facility for elderly persons shall be established within three-fourths ($^3/_4$) mile of another residential facility for elderly persons or residential facility for disabled persons as described in section 10-22-7 of this chapter;

5. No person being treated for alcoholism or drug abuse may be placed in the residential facility for elderly persons;

6. Placement in the residential facility for elderly persons shall be on a strictly voluntary basis and not a part of, or in lieu of, confinement, rehabilitation or treatment in a correctional facility;

The use granted and permitted by this subsection is nontransferable and terminates if the structure is devoted to a use other than as a residential facility for elderly persons or, if the structure fails to comply with the town ordinances.

B. Conditional Use; Single-Family Zones: Subject to the granting of a conditional use permit, a residential facility for elderly persons shall be allowed in any district which is zoned to permit exclusively single-family dwelling use if:

1. The facility conforms to all applicable building, safety, zoning and health codes;

2. The building is capable of use as a residential facility for elderly persons without structural or landscaping alterations that would change the building's residential character;

3. The facility is located on a dedicated town street;

4. The facility provides off street parking in conformance with section 10-23-8 of this title;

5. No person being treated for alcoholism or drug abuse shall be placed in the residential facility for elderly persons;

6. Placement in the residential facility for elderly persons shall be on a strictly voluntary basis and not a part of, or in lieu of, confinement, rehabilitation or treatment in a correctional facility;

7. The facility otherwise conforms with the requirements of chapter 3A of this title.

The use granted and permitted by this subsection B is nontransferable and terminates if the structure is devoted to a use other than as a residential facility for elderly persons or if the structure fails to comply with applicable health, safety and building codes.

C. Discrimination: Discrimination against elderly persons and against residential facilities for elderly persons is prohibited. The decision of the town regarding the application for a permit by a residential facility for elderly persons must be based on legitimate land use criteria, and may not be based on the age of the facility's residents.

D. Other Permitted Uses Not Limited: The requirements of this section that a residential facility for elderly persons obtain a conditional use permit or other permit do not apply if the facility meets existing zoning ordinances that allow a specified number of unrelated persons to live together. (Ord. 12-000, 12-28-1992)

## 10-22-7: RESIDENTIAL FACILITIES FOR DISABLED PERSONS:

A. Permitted Use: A residential facility for persons with a disability is a permitted use in any area where residential dwellings are allowed. Prior to establishing a residential facility for persons with a disability, a home occupation permit must be obtained by application to the planning commission. A home occupation permit shall be issued if the applicant can show that:

1. The facility meets all municipal, state or federal building, safety, zoning and health ordinances applicable to similar dwellings, and necessary permits have been obtained;

2. The facility is occupied on a twenty four (24) hour a day basis by eight (8) or fewer disabled persons in a family-type arrangement under the continuous supervision of a house family member or manager;

3. A community advisory committee will be established through which all complaints and concerns of neighbors may be addressed;

4. Adequate off-street parking space is provided;

5. The facility is capable of use as a residential facility for persons with a disability without structural or landscaping alterations that would change the structure's residential character;

6. No person being treated for alcoholism or drug abuse may be placed in the residential facility for persons with a disability;

7. The facility shall not be made available to an individual who, in the circumstances and even with reasonable accommodation, poses a serious threat to the health or safety of other individuals;

8. The facility is licensed either by the Utah department of human services under Utah Code Annotated title 62A, chapter 2, or by the Utah department of health under Utah Code Annotated title 26, chapter 21, health care facility licensing and inspection act, and said license is maintained as current and in good standing;

9. The facility is not located within three-fourths ($^3/_4$) mile of another existing residential facility for persons with a disability, measured in a straight line between the closest property lines of the applicable lots or properties.

    The use granted and permitted by this subsection is nontransferable and terminates if the structure is devoted to a use other than as a residential facility for persons with a disability which is not compatible with the zone, or if the structure fails to comply with the town ordinances.

B. Discrimination: Discrimination against persons with a disability and against residential facilities for persons with a disability is prohibited. The decision regarding the application for a permit by a residential facility for persons with a disability must be based on legitimate land use criteria, and may not be based on the disabilities of the facility's residents. (Ord. 00-12, 12-13-2000)

## 10-22-8: BED AND BREAKFASTS:

A bed and breakfast must comply with the following criteria:

A. Lot Frontage: The lot shall have at least fifty feet (50') of frontage on a dedicated street and shall not be a flag lot.

B. Owner/Operator Residence: Owner/operator must reside on the premises.

C. State Regulations, Applicable Codes: A bed and breakfast shall be subject to all state regulations governing such facilities and all applicable health, safety and building codes.

D. Parking: Two (2) off-street parking spaces shall be provided for owner/operator in residence; and one off-street parking space shall be provided per employee; and one space shall be provided per guest room.

E. Meals: Meals may be served to residents, employees, overnight lodgers, guests of overnight lodgers and guests of the owner/operator only. No cooking facilities shall be allowed in guest rooms.

F. Residential Structure; Alteration: If a bed and breakfast is established in an existing residential structure, said structure must be capable of such use without structural or site alteration which would change the residential character of the structure and yards. If located within a commercial zone, a bed and breakfast shall have no more than eight (8) rentable guest rooms. If located within a residential zone, a bed and breakfast shall have no more than four (4) rentable guest rooms.

G. Commercial Zones: A structure may be initially designed and constructed as a bed and breakfast within a commercial zone; however, the design of the structure and site shall be of a residential character, shall be of an architectural style and physical size consistent with residential structures, and shall have no more than eight (8) rentable guest rooms.

H. Landscaping: Site must be sufficiently landscaped to minimize impact to neighboring properties and retain the residential character.

I. Alcohol Sales Prohibited: No alcoholic beverages shall be sold on the premises.

J. Character Of Dwelling: The dwelling shall be of a character which contributes to the distinctive quality or identity of its neighborhood and the town. (Ord. 12-000, 12-28-1992)

K. Signs: One identification sign of wood or stone, not exceeding the area requirements for the respective zone in which the bed and breakfast is located may be placed on a masonry wall or monument. A bed and breakfast sign may only be illuminated by hooded spot lighting. If frontage is on a side street, a bed and breakfast is allowed one additional directional sign at the intersection of SR-9 and such side street, as provided in chapter 24 of this title. (Ord. 12-000, 12-28-1992; amd. 2001 Code)

L. Long Term Rentals: No long term rental of rooms shall be permitted. The maximum stay for lodgers shall be fourteen (14) days.

M. Business License Required: A business license shall be obtained as a condition of approval.

N. Exterior Lighting: Care shall be taken to ensure that no exterior lighting shines directly into adjoining properties. (Ord. 12-000, 12-28-1992; amd. Ord. 98-7, 10-1-1998)

## 10-22-9: HOME OCCUPATIONS:

To assure compliance with provisions of this title and to protect the character of residential neighborhoods in the town, while allowing limited conduct of business in the residential districts, a home occupation permit shall be obtained as provided in this section before a dwelling or accessory building in a residential zone may be used for business or other similar purposes.

A. Classes Of Home Occupations: There shall be two (2) classes of home occupations:

 1. Public Home Occupation (Class 1): Public home occupation (class 1) is a business wherein the public may come to the home for services or goods, and which has been granted a conditional use permit as a home occupation by the town council pursuant to chapter 3A of this title. Examples include, but are not limited to: styling salons, plant nurseries, childcare facilities and professional services by appointment.

 2. Nonpublic Home Occupation (Class 2): Nonpublic home occupation (class 2) is a business which has applied for and been granted a home occupation permit by the DCD, wherein the public does not come to the home and where business transactions are conducted by telephone, mail or fax, and where no goods or services are supplied to walk-in customers or by appointment. Examples include, but are not limited to: phone sales businesses, art studios without galleries or sales in the home, and consultants who work by phone or fax with no visiting clients.

B. Application: An application for a home occupation permit shall contain information sufficient to determine compliance with the provisions of this section and shall include:

 1. A completed home occupation permit application;

 2. Current property ownership information necessary to satisfy notification requirements, which shall include names and addresses of all owners of property located within three hundred feet (300') of the exterior boundaries of the subject property as further defined in section 10-3-1 of this title, and a copy of the county recorder's map on which property locations are keyed to ownership information;

 3. The appropriate filing fee as established by resolution of the town council.

C. Procedure: The approving authority may, upon application and properly noticed review, issue a home occupation permit which shall state the home occupation permitted, the conditions attached thereto, and any time limitations imposed thereon. The permit shall not be issued unless the approving

authority is satisfied that the applicant will meet all of the conditions listed below and that the applicant has agreed in writing to comply with all said conditions.

D. Notice Of Review: Notice shall be mailed or delivered to the owners of properties within three hundred feet (300') of a proposed home occupation, as listed on an application for home occupation permit. The notice shall state the nature and location of the proposed home occupation and advise of opportunity for review and comment on said home occupation within the time frame for review as herein established. A notice of a home occupation review shall be posted at three (3) prominent locations within the town at least fifteen (15) days prior to the conclusion of the town staff's established review period.

E. Investigation And Report: Upon receipt and acceptance of a completed application for a home occupation permit class 2, the approving authority shall review the application and supporting materials and investigate the proposed use in person. Applications shall be addressed through preparation of a written report characterizing the location and nature of the proposed use; the comments and concerns of neighboring property owners; conclusions on the approval or denial of the request on the basis of adopted criteria; and conditions of home occupation application approval as may be necessary to satisfactorily address noted concerns. Said report shall be finalized no later than thirty five (35) days after acceptance of a completed application. The decision of the approving authority shall be considered final.

F. Criteria: Home occupations, where permitted by the provisions of this title, shall comply with the following criteria:

1. A home occupation shall be conducted wholly within the dwelling or an accessory building on the premises, shall be clearly incidental to the use of the structure as a residence, and shall not exceed twenty five percent (25%) of the total floor area of said structures.

2. The home occupation shall in no way alter the residential character of the structure or premises or unreasonably disturb the peace and quiet, including radio and television reception, of the neighborhood by reason of color, design, materials, construction, lighting, signs, sounds, noises or vibrations.

3. Inventory and supplies for the home occupation shall not occupy more than fifty percent (50%) of the permitted area.

4. A home occupation shall not employ help other than the members of the resident family and one assisting nonfamilial employee.

5. No motorized, mechanical or electrical equipment, apparatus or tools shall be permitted except those items which are commonly associated with a residential use or as are customary to home crafts. This provision is not intended to preclude the use of personal computers, copy machines and similar equipment.

6. The use shall not generate pedestrian or vehicular traffic beyond the normal to the residence, except as provided in subsection A1 of this section.

7. No sign or advertising shall be displayed on the premises except as may be expressly permitted by this title.

8. The home occupation shall not cause a demand for town or utility services in excess of those usual and customary to the use of the property for residential purposes.

9. No smoke, odor, liquid or solid waste shall be emitted which is not usual and customary to the use of the property for residential purposes.

10. Classes Described:

   a. Public Home Occupation (Class 1): There shall be allowed display of goods, customer services, sales of goods, wares or merchandise on said premises.

   b. Nonpublic Home Occupation (Class 2): There shall be no display of goods, customer services or sales of goods, other than the sales of goods and services conducted by telephone and received by the customer off-premises by delivery or postal services.

11. Any special condition recorded in the home occupation permit which is necessary to carry out the intent of this section shall be met.

12. All home occupation permits shall be valid for three (3) years, and may be renewed, provided there have been no reported violations, complaints or detrimental characteristics which may, in the opinion of the approving authority, require termination of said home occupation.

G. Noncompliance: Any home occupation permit shall be revoked by the approving authority upon violation of any requirements of this section, or upon failure to comply with any of the conditions or limitations of the permit, unless such violation is corrected within three (3) days of receipt of written notice thereof. A permit may be revoked for repeated violations of the requirements of this section, notwithstanding compliance to the violation notice.

H. Business License Required: A home occupation permit is not a business license, and the granting of said permit shall not relieve the permittee of any other license requirement of the town or of any other public agency. (Ord. 12-000, 12-28-1992; amd. Ord. 11-96, 10-3-1996; Ord. 00-12, 12-13-2000; 2001 Code)

## 10-22-10: ACCESSORY USES:

Accessory or incidental uses that are not specifically listed as a permitted or a conditional use in any given zone may be allowed in connection with a permitted, conditional or nonconforming use. The determination of what qualifies as an accessory use is based upon such use's relationship to the principal use, such that the use is so customarily incidental to the principal use, and so necessary or commonly to be expected in conjunction therewith, that it cannot be supposed the ordinance was intended to prevent it.

A. Application: Application for an accessory use shall be made in writing to the planning commission and shall include the interpretation sought and such other information as may be specified by the town council. The planning commission shall recommend to the town council either to approve or deny the application, after which the town council shall decide on the actual approval or denial.

B. Standards: The planning commission in recommending to the town council whether to approve an application for an accessory use, and the town council in granting any approval of such an application, shall each find that:

   1. The accessory use is in harmony with the intent and purpose of the applicable zone, and in harmony with the intent and purpose of this title; and

2. The accessory use is in harmony with the intent and purpose of the general plan; and

3. The proposed accessory use is typical and customary to the nature of the primary use, and so necessary or commonly to be expected in conjunction therewith, that it cannot be supposed the ordinance was intended to prevent it; and

4. The size of the lot in question is sufficient for the proposed use and all required yards, parking, landscaping, open space and any other applicable provisions of this title; and

5. The proposed accessory use will not be detrimental to the public welfare or unreasonably detract from the enjoyment of neighboring properties and improvements; and

6. The proposed accessory use is essentially similar to uses in the vicinity of the lot or parcel at issue; and

7. The proposed accessory use is not the basis for establishment of a nonconforming principal use.

C. Appeals: Any appeal regarding a decision on an application for an accessory use under this section shall be made in accordance with section 10-3-11 of this title. (Ord. 00-12, 12-13-2000)

## 10-22-11: FARM ANIMALS:

A. Scope: The agricultural history of the town remains one of its characteristic features. It is the intent of this section to encourage the continuation of what agricultural use remains, for both its functional and aesthetic qualities.

B. Regulations: The following regulations shall apply to farm animals:

1. Animals Allowed: Small numbers of farm animals and fowl shall be allowed in the valley residential and agricultural zones only for small scale commercial and noncommercial food production, small scale commercial breeding or the enjoyment and convenience of the owner. The keeping of farm animals or fowl in the valley residential zone shall only be allowed as a conditional use.

2. Structures: Approval must be obtained from the planning commission, or DCD if the structures are minor (according to the criteria in section 10-15-7 of this title), prior to the construction, reconstruction, erection, alteration, expansion or modification of barns, stables, corrals, kennels, pens, coops and runs intended for the keeping of dogs, farm animals and fowl. (Ord. 2007-04, 7-11-2007)

## 10-22-12: MOBILE HOMES:

A. Mobile Home Subdivisions: All mobile home subdivisions hereinafter established shall be developed in accordance with the provisions of this title.

B. Manufactured Homes Outside Of Mobile Home Subdivisions: It shall be unlawful for any person to place, keep, maintain or permit to be placed, kept or maintained, a manufactured home on any lot, piece or parcel of land within the town, except in a mobile home subdivision, unless such manufactured home complies fully with the regulations set forth herein:

1. Regulations: The regulations set forth herein are imposed upon manufactured homes outside of mobile home subdivisions to accomplish the following purposes:

   a. To protect residential property values;

   b. To preserve the intent of the general plan; and

   c. To promote the general safety and welfare of the community.

2. Minimum Standards: Manufactured homes located outside of mobile home subdivisions shall comply with the following minimum standards:

   a. Manufactured homes may be used for single-family residential dwellings only, unless such structures qualify under subsection 10-22-4A4 of this chapter as temporary structures.

   b. A manufactured home shall have been certified under national manufactured housing construction and safety standards act of 1974, and must have been issued an insignia and approved by the U.S. department of housing and urban development and must not have been altered in violation of such codes.

   c. A manufactured home shall be permanently connected to and approved for all required utilities.

   d. A manufactured home shall be permanently connected to a foundation which meets the requirements of the uniform building code.

   e. All manufactured homes shall comply with the architectural standards and design guidelines established in chapter 16 of this title.

   f. The roof pitch must equal or exceed three to twelve (3:12) and the roof must have an overhang of no less than twelve inches (12"). (Ord. 12-000, 12-28-1992)

   g. The manufactured home must equal or exceed twelve feet (12') wide at its narrowest point, and shall equal or exceed forty feet (40') in length, exclusive of the area occupied by accessory structures such as garages. (Ord. 12-000, 12-28-1992; amd. 2001 Code)

   h. All manufactured home running gear, tongues, axles and wheels must be removed at the time of installation.

   i. Manufactured homes shall be taxed as real property.

   j. Replacement of existing nonconforming manufactured homes on any lot outside a mobile home park or subdivision shall comply with all the requirements herein.

3. Application: A building permit application shall be required for all manufactured housing. The application shall be accompanied by all plans as required by ordinance, including front, side and rear elevations, site plans, color samples, and any other information necessary for the director of community development to make a determination.

4. Director Of Community Development Review: At the time of application for a building permit, the director of community development shall review all required plans and make an inspection of the site to determine if the proposed location of such manufactured housing is compatible with surrounding development, and that it meets all other requirements of this section, this title and all other applicable local, state and federal ordinances and laws. (Ord. 12-000, 12-28-1992)

## 10-22-13: OPEN AIR DISPLAY:

An "open air display" is defined as the display of retail merchandise outside of a permanent business structure. An open air display is distinct from and not subject to the provisions governing temporary uses in that the duration is of a more permanent nature. The following standards and requirements shall apply:

A. Permit Required: Prior to the establishment of an open air display, a permit shall be secured for such use. A single open air display permit shall identify all open air display areas on the property. The permit may include multiple display areas for one or more businesses. After initial approval, the permit may be amended to include additional open air display area upon the request of the property owner or tenant. Applications for an open air display permit shall include:

1. Plans identifying the entire outdoor business area and all existing and proposed structures on the same parcel or lot; and

2. A brief description of the items to be displayed; and

3. A drawing showing the separate display locations to be used, location and dimensions of items to be displayed, and any furniture, fixtures, or other devices used in the outdoor display area; and

4. Hours of operation.

B. General Standards: The following general standards shall apply to all open air displays in order for a permit to be issued:

1. The open air display shall be conducted wholly on the same lot or parcel as the primary building with which such activities are associated.

2. The merchandise displayed shall be an extension of and of the same type and nature as either the merchandise of: a) the principal use or b) an approved accessory use as allowed in this title.

3. The area in which the open air display occurs outside of a permanent structure shall be used in the calculation of the parking requirements in accordance with chapter 23 of this title.

4. The area in which the open air display occurs outside of a permanent structure, but not including impervious materials, may be used in the calculation of total area of buildings as restricted by this title if:

   a. Covered by a canopy, awning, eaves, or other roofing materials; or

   b. Enclosed within a fence or wall effectively connecting it to a building.

5. Prior to the establishment of an outdoor display area, all existing uses on said lot shall be in compliance with the provisions of this title.

6. No displays shall be located in the public right of way, nor obstruct any exits or entrances, or impede the free flow of pedestrian traffic.

7. The open air display may be located within a required yard provided the yard area is not used in the calculation of total area of buildings (as in subsection B4 of this section) and contains no permanent structures.

8. The planning commission may attach conditions to the open air display. Such conditions may include, but are not limited to, conditions regarding landscaping, lighting, noise abatement, odors and fumes.

  9. All open air displays shall adhere to the intent and spirit and fulfill the purpose of chapter 16, "Architectural Standards And Design Guidelines", of this title. To this end, the planning commission may attach additional conditions to such displays. Such conditions may relate to height, scale, proportion, style, colors and materials used. Conditions may also limit the display area to certain locations, impose shielding requirements and limitations regarding the movement of displayed items.

  10. No sales may take place at the open air display. All sales must be conducted inside a building.

  11. Open air displays must be unstaffed. Employees may not be stationed at the open air display. (Ord. 2009-08, 11-16-2009)

C. Review Process: Staff shall review all applications for an open air display permit. Following staff verification that the application is complete and all general standards have been satisfied, staff shall refer the application to the planning commission. Once the planning commission has approved the application, staff shall grant the permit. Staff and the planning commission shall process and act on all permit applications in a timely manner.

D. Planning Commission Review: Any permit application deemed complicated, by virtue of the size of the display, type of items displayed, or the like, may be referred in its entirety by the staff to the planning commission for its sole review and approval of the permit. The planning commission may attach conditions to the approval of the permit. The permit, when issued, shall contain a list of the designated conditions.

E. Permit Revocation: An open air display permit may be revoked, modified or reconsidered following notice and a hearing. Conditions giving rise to the reconsideration, modification or revocation of a permit are:

  1. Sale of the business or change of use,

  2. Development of previously unconsidered problems or issues,

  3. Failure to comply with the requirements of this code,

  4. Failure to renew or maintain a current business license,

  5. Failure to comply with the conditions of the permit, and/or

  6. Permit was obtained by misrepresentation or fraud.

F. Status Of Existing Permits: Open air displays were previously authorized through the issuance of conditional use permits. Existing conditional use permits will not be changed or affected by the requirements of this section. The conditions attached to each permit will continue to control. The rights granted with the existing conditional use permits will run with land, unless limited by attached conditions. The existing permits will continue to be governed by the provisions of chapter 3A of this title. (Ord. 02-01-1, 1-9-2002)

## 10-22-14: FARMERS' MARKETS:

The following regulations are provided to accommodate the selling and buying of a variety of produce and associated goods in farmers' markets. Farmers' markets must be sponsored by a formal committee or organization and may accommodate any number of individual vendors.

A. Standards: Farmers' markets must comply with all of the following regulations:

1. Farmers' markets are allowed in the CC, VC, AG, and PU zones, with the written permission and consent of the property owner.

2. The majority of commodities to be sold at a farmers' market shall be produced in Washington County, Utah, and shall be limited to:

    a. Farm and garden produce and agricultural products such as fruits and vegetables, plants, flowers, nuts and seeds, meat, poultry, fish, dairy products, and honey;

    b. Baked goods, processed food items (such as jams, jellies, salsas, and sauces), and hot or cold beverages; and

    c. Handmade arts and crafts related to gardening or outdoor living, handmade soaps and lotions, and similar nonmass produced items.

3. Food items prepared or assembled on site may not be sold at farmers' markets.

4. The sponsor of a farmers' market must provide to the town proof of liability insurance sufficient to cover the owner of land where a market is located and market participants.

5. Sufficient parking must be provided such that the farmers' market does not create parking or traffic congestion on or around the property where the market is located. Written permission must be obtained from the owner of any private parking areas used to serve the farmers' market.

6. Farmers' markets may not be established in any manner that impedes or impairs emergency service ingress and egress to any fire hydrant or building. No farmers' market vendor or any vehicle associated with the farmers' market shall be located within fifteen feet (15') of any fire hydrant.

7. The sponsoring committee or organization is responsible for supervising and ensuring the remittance of sales tax from farmers' market sales to the state tax commission.

8. All tents, booths, tables, and other temporary structures used in the operation of the farmers' market must be removed from the farmers' market site at the conclusion of each day the market is in operation.

9. All trash, fruit or produce remnants, debris, and general litter must be removed from the farmers' market site at the conclusion of each day the market is in operation. The sponsoring committee or organization is responsible for ensuring the general cleanup of the farmers' market area at the conclusion of each day of operation.

B. Health Department Supervision: Each vendor selling processed foods, baked goods, meats, eggs, dairy products, or other goods that may be a health concern is subject to approval of the state health department and shall operate according to the department's rules and regulations.

C. Months Of Operation And Days Open: Farmers' markets shall only operate during the months of April through November of each year and for a maximum of two (2) nonconsecutive days per week. In the

event more than one farmers' market is established in the town, the director of community development shall designate permissible days and times for each market to operate.

D. Signage: Farmers' markets are allowed one on site temporary banner and two (2) off site temporary banners, provided:

1. The on site banner is limited to twenty (20) square feet in area and the off site banners are each limited to ten (10) square feet in area;

2. The banners meet the color requirements established in chapter 17 of this title;

3. The owner of the property where the banners are placed has given written permission to hang the banners;

4. The banners are not illuminated; and

5. The banners are only displayed on days and during times the farmers' market is actually in operation, except that the off site banners may be displayed a maximum of twenty four (24) hours prior to the operation of the farmers' market.

6. A farmers' market held on property without frontage on SR-9 will be allowed one additional ten (10) square foot off site banner provided such banner is placed along the road or street on which the property fronts and not along SR-9.

E. Application And Permit: An application for a farmers' market permit shall be filed with the director of community development, who shall review the application and issue a farmers' market permit if the proposed market complies with all the standards of this chapter and all other applicable sections of this title. The application shall be on a form available at the town office and shall contain the following required information:

1. Name of the applicant and organizational affiliation;

2. A current copy of the sponsoring committee's or organization's bylaws or rules of operation;

3. Letter of authorization from the owner of the property on which the farmers' market is proposed to be located;

4. Existing zoning of site and contiguous properties;

5. Site plan, drawn to scale, showing proposed locations of all market uses as well as existing permanent structures and parking areas;

6. The proposed dates and times the market will be in operation;

7. Proof of liability insurance sufficient to cover the owner of land where the market is located and market participants; and

8. Color rendering of temporary signage associated with the market and letters of authorization from property owners where the signage will be hung.

F. Suspension Of Permit: The chief of police and the director of community development are authorized to conduct inspections of the farmers' market to ensure compliance with the standards of this section. A farmers' market permit shall be suspended and the market immediately ceased in the event the chief of police or the director of community development finds the market violates any of the provisions of

this section or the conditions set forth in the farmers' market permit. The permit may be reinstated at such time as the violation is corrected.

G. Business License Required: A farmers' market permit is not a business license and the granting of said permit shall not relieve the permittee of any other license requirement of the town or any other public agency.

H. Fees: In order to offset a portion of the costs incurred by the town in the processing of a farmers' market permit, a fee shall be charged as established by resolution of the town council. (Ord. 2006-07, 5-3-2006)

**Footnotes** - Click any footnote link to go back to its reference.
Footnote 1: See section 10-3A-5 of this title.
Footnote 2: See section 10-3A-5 of this title.